GASKINS, J.
hThe plaintiffs, owners of Virginia Banks Plantation in Tensas Parish, appeal a trial court judgment finding that Zimmerman Farms, LLC is the owner of a disputed piece of property totaling 4.19 acres, which was formerly part of Virginia Banks Plantation. For the following reasons, we affirm the trial court judgment.
FACTS
The plaintiffs, Myron B. Marks, Ralph S. Marks, Mark Stoock, II, W.H. Eiseman, Mark Stroock, III, Carolyn Stroock, and SB-10-D, LLC, are the owners of Virginia Banks Plantation. This property was acquired by the Marks family in 1902. Property to the south of the plaintiffs’ planta *770 tion was acquired by Dr. E.C. Ferguson in 1937. After Dr. Ferguson’s death, his widow, Katie 0. Ferguson, eventually became the owner of the property. In 2002, she conveyed the property to KOF Locust Ridge Farm, LLC (KOF Locust Ridge). In 2003, KOF Locust Ridge sold the land to Osborn Farms, LLC (Osborn Farms).
North of the southern property line described in the deed of Virginia Banks Plantation is a very old barbed wire fence. For many years, the Fergusons and Osborn Farms believed that the fence marked the boundary between their property and Virginia Banks Plantation. The Fergusons, and later Osborn Farms, possessed the disputed property, which totals about 27 acres, up to the fence.
In August 2005, Osborn Farms sold the east side of the property to Zimmerman Farms, LLC (Zimmerman Farms). The north part of the property that Osborn Farms had acquired by 30 years’ acquisitive ^prescription was sold by quitclaim deed. The 134 acres directly south of the disputed property, to which Osborn Farms had title from KOF Locust Ridge, was sold by a cash sale deed. This property was directly south of the 4.19 acre tract. On October 17, 2005, the plaintiffs filed a petition for declaratory judgment against Zimmerman Farms, claiming there was a dispute over possession and ownership caused by the execution and recordation of the quitclaim deed for the 4.19 acre tract from Osborn Farms to Zimmerman Farms.
In April 2006, the plaintiffs filed a petition for declaratory judgment against Osborn Farms claiming that there was a dispute as to possession and ownership for the remaining 23.05 acre tract in the disputed property. The plaintiffs took this action based upon an assertion by Osborn Farms in a dismissed bankruptcy proceeding that, notwithstanding the lack of record title, Osborn Farms had acquired ownership of the tract by adverse possession and acquisitive prescription.
Zimmerman Farms filed an answer and reconventional demand making the following observations. By quitclaim deed, on August 26, 2005, Osborn Farms transferred the subject 4.19 acre tract to Zimmerman Farms. Prior to the transfer, Osborn Farms and its ancestors in title had continuous, uninterrupted, peaceable, public, and unequivocal corporeal possession of the 4.19 acre tract for more than 30 years. For more than 30 years, there has been a barbed wire fence separating the 4.19 acre tract from the plaintiffs’ property, which lies to the north. The plaintiffs and their ancestors in title placed posted signs on the north side of the fence line and hunted only on 13the north side of the fence. The fence had been treated as the boundary line by all parties, including the plaintiffs. For more than 30 years, Osborn Farms and their ancestors in title possessed, mowed, and hunted on the south side of the fence. Osborn Farms and their ancestors in title exercised corporeal possession of the 4.19 acre tract for more than 30 years and therefore acquired ownership by acquisitive prescription because of these factors. Zimmerman Farms claimed that it is the owner of the 4.19 acre tract and is entitled to be declared the owner thereof.
Osborn Farms filed an answer and re-conventional demand also asserting that it and its ancestors in title have possessed the 23.05 acre tract up to the fence line for more than 30 years and therefore Osborn Farms is the owner by acquisitive prescription.
Trial on this matter was held on January 24 and 30, 2008. At trial, extensive testimony was presented concerning acquisitive prescription of the disputed area. The owners of Osborn Farms testified that they and their ancestors in title had long *771 recognized the fence as the boundary line between the properties. They mowed a shooting lane and trimmed trees on the tract. They also hunted on the disputed property up to the fence line and maintained deer stands and deer food plots on the disputed acreage.
At trial, the plaintiffs showed that then-family purchased Virginia Banks Plantation in 1902 and their deeds specified that the boundary of the property lay to the south of the fence line. However, the plaintiffs placed posted signs on the fence line and could not show any acts to interrupt the | ¿possession of the disputed acreage by Osborn Farms, Zimmerman Farms, or their ancestors in title.
The trial court denied the plaintiffs’ petitions for declaratory judgment against Zimmerman Farms and Osborn Farms. The reconventional demand by Zimmerman Farms was granted, finding it to be the owner, by virtue of 30 years’ acquisitive prescription, of the 4.19 acre tract. The trial court also granted the reconven-tional demand in favor of Osborn Farms, declaring it to be the possessor and owner by virtue of 30 years’ acquisitive prescription of the acreage it claimed.
In its reasons for judgment, the trial court identified three issues for decision in this matter. The first issue was whether the defendants exercised possession of the disputed property for more than one year. Second, the trial court was called upon to decide whether the plaintiffs proved title to the disputed property good against the world. Finally, the trial court addressed whether the defendants carried their burden of proving ownership of their respective tracts by acquisitive prescription.
The trial court found that the defendants had been in corporeal possession of the disputed property for a period substantially exceeding one year prior to suit. The trial court also concluded that the plaintiffs proved title to the disputed property good against the world.
In considering whether the defendants showed that they had acquired ownership of the disputed tracts by acquisitive prescription, the trial court found that the plaintiffs acknowledged that La. C.C. art. 794, dealing with acquisitive prescription in boundary cases, was applicable to the claim by |5Osborn Farms. However, the plaintiffs contended that, because Zimmerman Farms acquired title by quitclaim deed from Osborn Farms to the disputed 4.19 acre tract, their claim is a title action and not a boundary action. Consequently, the plaintiffs insisted that La. C.C. art. 794, dealing with acquisitive prescription in boundary cases, does not apply to that claim.
The trial court found that Osborn Farms clearly showed that it had obtained ownership of its portion of the disputed property by virtue of 30 years’ acquisitive prescription. The trial court found that Osborn Farms and its ancestors in title had been in possession of the disputed property at least since 1963. The trial court also concluded that La. C.C. art. 794 was applicable to Zimmerman Farms and that Zimmerman Farms could tack its possession to its ancestors in title. The trial court held that, based upon the evidence presented at trial, Osborn Farms and Zimmerman Farms were owners of their respective portions of the disputed property by virtue of 30 years’ acquisitive prescription. The plaintiffs appealed and Zimmerman Farms has answered the appeal.
ACQUISITIVE PRESCRIPTION AND TACKING
The plaintiffs acquiesce in the judgment finding that Osborn Farms acquired ownership of the approximately 23 acre tract of disputed property by virtue of acquisi *772 tive prescription. The plaintiffs appealed the trial court judgment only as to the reconventional demand regarding Zimmerman Farms. The plaintiffs claim that the trial court erred in applying La. C.C. art. 794 to find that Zimmerman Farms is the owner of the 4.19 acre tract.
| r,The plaintiffs assert that Zimmerman Farms can only pursue their claim of ownership under La. C.C. arts. 3441 and 3442, the general rules of acquisitive prescription, rather than under La. C.C. art. 794 which deals with prescription to visible boundaries. According to the plaintiffs, if acquisitive prescription accrues in favor of a party adversely possessing immovable property, that fact does not in itself convey ownership. The plaintiffs cite comment (d) to La. C.C. art. 3449 and La. C.C. art. 3452 for the proposition that prescription does not take place by operation of law, but must be set up by the party.[1] The plaintiffs urge that the quitclaim deed |7from Osborn Farms to Zimmerman Farms could only convey the right to plead prescription.
The plaintiffs assert that quitclaim deeds are translative of title and are sufficient to support a plea of prescription based on title. However, the plaintiffs claim that, because Zimmerman Farms thought it had valid title to the 4.19 acre tract, La. C.C. art. 794 does not apply and cannot be used by Zimmerman Farms to establish 30 years’ acquisitive prescription to visible boundaries. The plaintiffs argue that, had the transactions between Osborn Farms and Zimmerman Farms only included or involved the adjacent 134 acres of Ferguson property lying south of the disputed 4.19 acre tract, the matter would fall squarely under La. C.C. art. 794.[2]
According to the plaintiffs, boundary prescription under La. C.C. art. 794 does *773 not require a juridical link with respect to the area in dispute, although it does require a juridical link with respect to the adjacent property. They go on to argue that, in addition to the requirement of a visible boundary encompassing the disputed property, there can be no associated title claim to the disputed and adversely possessed property. In support of this contention, the plaintiffs cite repealed La. C.C. art. 852 which stated that one cannot prescribe against his own title. The plaintiffs argue that acquisition by Zimmerman Farms of a deed to the 4.19 acre tract removed |sits adverse possession claim from one under La. C.C. art. 794 to one under La. C.C. arts. 3441 and 3442.[3] The plaintiffs essentially claim that the assertion of ownership by title amounted to a renunciation by Osborn Farms of its adverse possession and reverted title back to the plaintiffs. They contend that Zimmerman Farms would then have to commence possession anew for purposes of acquisitive prescription and could not tack to the possession of Osborn Farms or its ancestors in title. The plaintiffs claim that Zimmerman Farms cannot establish privity of title between it and any ancestor in title of Osborn Farms to the disputed 4.19 acre tract, which is a requirement for Zimmerman Farms to claim ownership by 30 years’ acquisitive prescription under its quitclaim deed. The plaintiffs claim that this lack of privity of title is fatal to the claim of Zimmerman Farms. The plaintiffs admit that they have found no cases in which a litigant has asserted ownership by acquisitive prescription and also by a deed translative of title.
Zimmerman Farms disputes the plaintiffs’ argument that only the right to assert ownership by acquisitive prescription was conveyed by the quitclaim deed. Zimmerman Farms points out that it filed a recon-ventional |9demand against the plaintiffs, seeking a declaratory judgment that Osborn Farms and its ancestors in title possessed the 4.19 acre tract for more than 30 years and that Osborn Farms was the owner when it executed the quitclaim deed in favor of Zimmerman Farms.
Zimmerman Farms also argues that it can tack its possession to that of its predecessors under either La. C.C. art. 794 or La. C.C. arts. 3441 and 3442. Zimmerman Farms claims that no court has held that a party cannot tack possession of its ancestors in title, within visible bounds, to more land than the title called for under La. C.C. art. 794 if the party has a quitclaim deed to the same property. Zimmerman Farms points out that it also has a cash sale deed to an adjoining tract which totals approximately 134 acres. Zimmerman Farms asserts that it is able to tack its possession under La. C.C. art. 3442. It urges that the quitclaim deed is the juridical link required in order for Zimmerman Farms to be able tack the possession of its ancestors in title.
Legal Principles
Ownership of immovable property may be acquired by the prescription of 30 years without the need of just title or possession in good faith. La. C.C. art. 3486. Ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title. Under the general codal provisions on acquisitive prescription, a possessor lacking good faith and/or just title may acquire prescriptive title to land by corporeally possessing a tract for 30 *774 years with the intent to possess as owner. Such possession confers prescriptive title |inupon the possessor only when it is continuous, uninterrupted, peaceable, public and unequivocal, and confers title only to such immovable property as is actually possessed. La. C.C. arts. 3424, 3476, 3486, 3487, 3488; Brown v. Wood, 451 So.2d 569 (La.App. 2d Cir.1984), writ denied, 452 So.2d 1176 (La.1984); Brunson v. Hemler, 43,347 (La.App. 2d Cir.8/13/08), 989 So.2d 246, writ denied, 2008-2297 (La.12/12/2008), 996 So.2d 1119.
Actual possession must be either inch-by-inch possession or possession within enclosures. According to well-settled Louisiana jurisprudence, an enclosure is any natural or artificial boundary. La. C.C. art. 3426; Brunson v. Hemler, supra. The party who does not hold title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. Brun-son v. Hemler, supra.
Under La. C.C. art. 794, a title holder may acquire more land than his title calls for by possessing property beyond his title for 30 years without interruption and within visible bounds. Such title holder may attain the 30-year posses-sory period — which is necessary to perfect prescriptive title in the absence of good faith and just title — by “tacking” on the possession of his ancestor in title. La. C.C. arts. 794, 3442. Possession is only transferable by universal title or particular title. La. C.C. art. 3441. When possession is so transferred, the possession of the transferor is tacked to that of the transferee if there has been no interruption of possession. La. C.C. Inart. 3442. Under these provisions, privity of contract or estate is an essential prerequisite to tacking. Brown v. Wood, supra; Brunson v. Hemler, supra.
Privity denotes merely a succession of relationships to the same thing, whether created by deeds, or by other act, or by operation of law. If one, by agreement, surrenders his possession to another, and the acts of the parties are such that the two possessions actually connect, the latter commencing at or before the former ends, leaving no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one, and the limitation period upon the right of each owner to reclaim the land is thereby continued; indeed that purpose of continuous possession is the continuous ouster of the owner. Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 So. 768 (1918).
The legal principles which govern tacking under La. C.C. art. 794 are in some respects different and distinct from the principles which govern tacking under La. C.C. arts. 3441 and 3442. La. C.C. art. 794 deals with boundary prescription, strictly speaking, while La. C.C. arts. 3441 and 3442 provide general rules which refer in broader terms to acquisitive prescription of property, generally. Brown v. Wood, supra.
In Brown v. Wood, supra, this court noted that tacking under La. C.C. art. 794 is different from tacking under the general tacking provisions of La. C.C. arts. 3441 and 3442 in the following respect:
Under Article 794, the privity of title between the possessor and his ancestor in title need not extend to the property to which the possessor asserts prescriptive title; under Article 794, the juridical link, or written instrument which passes to |12the possessor from his ancestor in title need not encompass or include the particular property to which the posses *775 sor claims prescriptive title. On the other hand, it is generally conceded under the general tacking provisions of Articles 3441 and 3442 and their statutory pre-cursors, that tacking is only allowed with respect to property that is included and described in the juridical link between the possessor’s ancestor in title and the possessor himself.
Simply stated, under Art. 794 (old Art. 852), one may utilize tacking to prescribe beyond title on adjacent property to the extent of visible boundaries, but under the general prescriptive articles, Arts. 3441 and 3442, tacking may be utilized to prescribe only to the extent of title. As was succinctly stated by former Justice, then Judge Tate, in Stanford v. Robertson, 144 So.2d 747, 750 (La.App. 3d Cir.1962),
“Under LSA-C.C. art. 3499, the possession of the predecessors in title cannot be added to that of the present possessor, unless the title of the present possessor includes the property in dispute, else there is no privity of estate such as is necessary to make up the thirty years adverse possession “as owner”. On the other hand, under LSA-C.C. Art. 852, the tacking of successive possessions up to the established visible bound between two estates is permitted, whether or not the land in dispute is included within the title description of the party pleading prescriptive title under this article.” (Citations omitted).
However, when correctly viewed, there still must be some juridical link to effectuate tacking under either species of tacking, whether it is Article 794 or Articles 3441 and 3442.
The fact that Article 794 envisions that tacking requires some juridical link or privity of title between the possessor and his ancestor is clear. That statute affords prescriptive title only in instances where there has been thirty years of possession by the possessor “and his ancestors in title.” (Emphasis added). The fact that Art. 794 envisions tacking only where there is privity of title is therefore clear from the fact that this Article expressly authorizes tacking not in terms of a predecessor in possession, but in terms of an “ancestor in title.” In summary, tacking allows one to prescribe beyond title under Art. 794, and not under Articles 3441 and 3442; but nevertheless some juridical link, or some title privity in contract or estate, is required before tacking is allowed under | ^either Articles 3441 and 3442 or 794. [Citations and footnotes omitted.]
Privity of estate or contract is essential to tacking possessions for the theoretical reason that-absent such privity-succeed-ing possessions of the same tract are legally viewed as merely unconnected acts of trespass. In the absence of privity, acts of adverse possession by different possessors “can be construed only as a series of trespasses.” Upon the termination “of each of these acts the possession returns, by operation of law, to the record owner of the property.” Roberson v. Green, [91 So.2d 439 (La.App. 2d Cir.1956) ], at 447. See also, Buckley v. Catlett, [203 La. 54, 13 So.2d 384 (1943) ]; Emmer v. Rector, [175 La. 82, 143 So. 11 (1932) ]; Sibley v. Pierson, [125 La. 478, 51 So. 502 (1909) ].
Discussion
The plaintiffs contend that, because Zimmerman Farms had a quitclaim deed to the property, it was precluded from claiming ownership through acquisitive prescription to visible boundaries under La. C.C. art. 794. The plaintiffs claim that Zimmerman Farms can only assert ownership to the extent of its title under *776 La. C.C. arts. 3441 and 3442. According to the plaintiffs, Zimmerman Farms did not have privity of title with its ancestors in title to the 4.19 acre tract and therefore, could not prove ownership of the property. The plaintiffs argue that the execution of the quitclaim deed was tantamount to a renunciation by Osborn Farms of its prior possession of the property to visible boundaries.
We do not find any codal or jurisprudential authority to support the plaintiffs’ arguments. The trial court was correct in applying La. C.C. art. 794 to this case to find that Zimmerman Farms proved ownership of the 4.19 acre tract by virtue of 30 years’ acquisitive prescription. Zimmerman |14Farms acquired property immediately adjacent to the disputed tract by a cash sale deed in August 2005. Zimmerman Farms had the required privity of title to the adjoining property. The evidence in this case shows that Osborn Farms and its ancestors in title possessed the disputed property up to the fence line, which included the disputed property. Zimmerman Farms continued that possession, up to the fence line, after it acquired the adjoining property in 2005. Zimmerman Farms is entitled to tack its possession to that of its ancestors in title. By this tacking of possession, Zimmerman Farms has established ownership of the disputed 4.19 acre tract by 30 years’ acquisitive prescription, without interruption, within visible bounds, under La. C.C. art. 794.
The case of Brown v. Wood, supra, indicates that the plaintiffs are not correct in arguing that Zimmerman Farms could not show ownership by acquisitive prescription under La. C.C. art. 794 because it had a quitclaim deed to the property. In Brown, the defendants purchased property by deed in 1956 from Mr. Oliveaux. The property description did not include a tract that later became the subject of the dispute. The property purchased and described in the deed adjoined the disputed tract. After their purchase, the defendants performed various acts of corporeal possession on a portion of the disputed tract, until interruption of their possession by the filing of suit in 1982 by the plaintiffs who claimed that they had record title to the disputed acreage. In 1981, the defendants acquired a quitclaim deed to the disputed property from Mr. Oliveaux. The court noted that the defendants had not possessed the disputed property themselves for the requisite 3011syears and had only possessed a portion of the disputed property. The court found that the defendants were entitled to tack their possession to that of Mr. Oliveaux to achieve ownership by virtue of 30 years’ acquisitive prescription of only that portion of the disputed property that the defendants and Mr. Oliveaux had possessed.
The defendants in Brown argued that they were also entitled to tack possession under the quitclaim deed. The court found that, since the quitclaim deed was executed while the dispute over the ownership of the contested acreage was “boiling,” the deed was discounted because it was confected under suspicious circumstances. The court cited Stutson v. McGee, 241 La. 646, 130 So.2d 403 (1961), for the proposition that the quitclaim deed executed while a controversy over the property was brewing would not be accepted and applied.
In Brown v. Wood, supra, the court also noted that, when that quitclaim deed was executed in 1981, Mr. Oliveaux had been out of possession of the property for many years. Therefore, Mr. Oliveaux had no accrued possession to transfer at that time. The court stated that, in the strictest sense, privity may not be retroactively established subsequent to a transfer of possession. However, the court never stated *777 that the execution of a quitclaim deed precluded the consideration of whether a party could assert ownership by 30 years’ acquisitive prescription to visible boundaries under La. C.C. art. 794.
In the present case, Osborn Farms was in possession of the disputed property when it executed both the quitclaim deed in favor of Zimmerman |1fiFarms and the cash sale deed to the adjoining property. The possession of Osborn Farms and its ancestors in title transferred to Zimmerman Farms. Under the provisions of La. C.C. art. 794, Zimmerman Farms clearly established ownership by acquisitive prescription of the disputed 4.19 acre tract. We do not find that the execution of the quitclaim deed precluded Zimmerman Farms from asserting ownership by acquisitive prescription and tacking its possession to that of its ancestors in title under La. C.C. art. 794.[4]
CONCLUSION
For the reasons stated above, we affirm the decision of the trial court finding that Zimmerman Farms is the owner of the disputed 4.19 acre tract by virtue of 30 years’ acquisitive prescription. Costs in this court are assessed to the plaintiffs.
AFFIRMED.

. La. C.C. art. 3449 deals with renunciation of prescription after it has accrued. The statute provides:
Prescription may be renounced only after it has accrued.
Comment (d) provides:
d) According to the civilian tradition, the renunciation of prescription is not an act translative of ownership. It is a unilateral act that does not require acceptance by the other party; moreover, it does not require any formality. See 3 Planiol et Ripert, Traité pratique de droit civil frangais, 748 (2d ed. Picard 1952):
"Renunciation is a unilateral act that does not require acceptance by the other party....
"The possessor who renounces prescription when it has run in his favor, seems to divest himself of his right and to agree to an act translative of ownership in favor of somebody else. But this is so merely in appearance. As has already been seen (no. 2709) prescription does not take place by operation of law. It must be set up by the party. The Court cannot do so of its own motion. Consequently, if it be a means of acquiring, it is still necessary that use be made of it. When he, in whose favor prescription has run, renounces it, he refrains from making use of a means that the law offers him to become owner. It may accordingly be said that he threw away an opportunity to acquire, that he refused to have a piece of property become part of his patrimony. It would, however be a mistake to say that he had alienated it, that he had transmitted the ownership to another. Article 2221 speaks of the renunciation of prescription as 'the abandonment of an acquired right.' But this term 'acquired' connotes merely the right to set up the plea of prescription. It is of the right, and not of the ownership which is not as yet acquired, that the possessor despoils himself by his renunciation.
La. C.C. art. 3452 provides:
Prescription must be pleaded. Courts may not supply a plea of prescription.

. La. C.C. art. 794 provides:
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.

. La. C.C. art. 3441 specifies:
Possession is transferable by universal title or by particular title.
La. C.C. art. 3442 provides:
The possession of the transferor is tacked to that of the transferee if there has been no interruption of possession.

. In its answer to the appeal, Zimmerman Farms argues that, if this court finds that Zimmerman Farms had not proven ownership of the 4.19 acre tract by acquisitive prescription, the plaintiffs would be required to prove title to the property good against the world. The trial court found that the plaintiffs had satisfied that burden. Zimmerman Farms claims that holding is in error and attacks three deeds in the plaintiffs' chain of title. Those deeds were executed in 1836, 1839, and 1844, describing the Virginia Banks Plantation property as being located in Concordia Parish, not Tensas Parish. The deeds were recorded in Concordia rather than Tensas Parish. Zimmerman Farms argues that these are serious title issues defeating the plaintiffs’ claim of title good against the world. Zimmerman Farms also notes that the plaintiffs did not present any expert testimony supporting the argument that they proved title good against the world. Because we find that Zimmerman Farms has established ownership of the disputed property by virtue of 30 years’ acquisitive prescription under La. C.C. art. 794, we do not reach a consideration of Zimmerman Farm’s answer to the appeal.