Judgment rendered April 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,475-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SAMMY C. FORD, JR.                    Plaintiff-Appellee

versus

JOY DELTON HANDY                      Defendant-Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 80,067

Honorable Nicholas E. Gasper, Judge

* * * * *

CHARLES NEUPERT &                     Counsel for Appellant
ASSOCIATES, LLC
By:  Charles J. Neupert, Jr.

BETHARD & BETHARD, LLP                Counsel for Appellee
By:  Robert E. Bethard

* * * * *

Before PITMAN, THOMPSON, and MARCOTTE, JJ.

**THOMPSON, J.**

In 1970, a husband conveyed to his parents a home on over an acre of land located in DeSoto Parish, Louisiana, which was the separate property of his wife, Joy Handy. The husband's parents then conveyed the property to their daughter and her husband in 1972, who later consolidated ownership in a 1982 conveyance to only the wife's name, before it was ultimately inherited through a succession affidavit in 2018 by her son, Sammy Ford, Jr., who is the plaintiff in this action.

Mr. Ford instituted a declaratory judgment proceeding for ownership of the property when Mrs. Handy and her descendants recently began undertaking actions which appeared to suggest they intended to exert ownership of the land. The trial court held there had been sufficient evidence to sustain a claim for ten-year good faith acquisitive prescription, as well as 30-year acquisitive prescription. For the reasons set forth in more detail below, we affirm the trial court's judgment ruling the property had been acquired through ten-year good faith acquisitive prescription.

### FACTS AND PROCEDURAL HISTORY

This declaratory judgment action asserting ten-year good faith acquisitive prescription or 30-year acquisitive prescription of a one-acre parcel of land was brought by the current record owner, Sammy C. Ford, Jr., (hereinafter "Sammy") against the prior owner, Joy Delton Handy (hereinafter "Joy"). Joy opposes the action, asserting she never participated in any deed conveying her ownership interest and that there had not been sufficient possession of the property by the opposing party to deprive her of her ownership interest in the property.

On February 18, 1967, Ruby Price Delton conveyed a one-acre tract of land in DeSoto Parish, Louisiana, that is the subject of this lawsuit (hereinafter, the "Subject Property") to her daughter, Joy, as her separate property.[1]  At the time of that conveyance, Joy was married to Odis Handy, Sr., and they had three sons, Odis Handy, Jr., Cedric Handy, and Anthony Handy.  In 1970, Joy separated from her husband, and she and her sons moved to California.

On August 19, 1970, after Joy had moved to California, Odis Handy, Sr. executed a deed that purported to convey the Subject Property, which includes a house, to his parents, A.J. Handy and Annie Bell Handy.  A.J. and Annie Handy agreed to assume the outstanding mortgage on the property.  Joy was not included in the deed for the conveyance.  The parties agree that at the time of this conveyance, Odis Handy, Sr. had no actual ownership interest in the Subject Property, as it was his wife's separate property, which she received in the prior conveyance from her mother.

On April 21, 1972, A.J. and Annie Bell Handy conveyed the Subject Property to Sammy C. Ford, Sr. and Ola Mae Ford, husband and wife.  Ola Mae was the daughter of A.J. and Annie Handy and was Joy's sister-in-law.  The Fords also assumed the mortgage on the property from the Handys.  Ola Mae and Sammy Ford, Sr. began living in the house on the property in 1972.

In 1974, Joy returned from California with her children and began living in Mansfield, Louisiana.  She and Odis Handy, Sr. reconciled and

---

[1] This conveyance includes the following language: "This property is purchased by the vendee with her own separate paraphernal funds, under her separate administration and for her separate use and benefit."  This language is sufficient to transfer the Subject Property to Joy as her separate property.  La. C.C. arts. 2341; 2342.

remained married for many years. Joy never resumed living in the house on the Subject Property.

On April 21, 1982, Sammy Ford, Sr. conveyed his portion of the Subject Property to Ola Mae. Years later, in 1995, Ola Mae mortgaged the Subject Property in order to make certain improvements to the house. On October 17, 2000, Ola Mae died, leaving her son, Sammy Ford, Jr., as her sole heir. It was not until December 11, 2018, that Sammy filed a small succession affidavit for his mother in order to transfer the Subject Property to his name, likely necessitated by the May 14, 2018 oil and gas lease he had signed covering the Subject Property.

In 2017, Joy asserted that she owned the Subject Property, having never conveyed her interest in any deed translative of ownership, which triggered the eventual filing of the current litigation by Sammy, the son and heir of Ola Mae. Sammy filed a petition for declaratory judgment on December 26, 2018, asserting his ownership of the Subject Property through the various deeds and succession documents, which Joy opposed.[2] The matter progressed to a trial on October 10, 2022.

At the trial, witness testimony provided that Ola Mae lived on the Subject Property from 1972 until her death in 2000. Joy testified that she allowed Ola Mae to occupy the house, and Ola Mae lived there with her permission, consent, and acquiescence. Sammy testified he lived on the Subject Property from the time he was three years old until he married in 1990. After his mother died, Sammy leased the property to his sister-in-law

---

[2] Despite arguments to the contrary, a petition for declaratory judgment was an appropriate vehicle for this claim at the time. La. C.C.P. art. 3654; *1026 Conti Holding, LLC v. 1025 Bienville, LLC*, 22-01288 (La. 3/17/23), 359 So. 3d 930.

3

for about one year, and he lived on the property after she moved out until around 2006. Sammy testified that after 2006, he maintained the property on a regular basis. In 2012, he lost his eyesight and continued to maintain the property intermittently and to the best of his ability, once he regained some of his eyesight.

Joy contends that from 2000 to 2017, the Subject Property fell into a state of disrepair. She claims that Google Earth photos reflect an abandoned house with no doors or windows. A nearby neighbor testified that the property was vacant during this time. During this time period, Cedric, Anthony, and Odis Handy, Jr. all testified that they used the property on a regular basis to cross to access their hunting property located just north of the Subject Property. From 2016 to 2017, Joy's son, Odis Handy, Jr. started the process of demolishing the house on the land and clearing the property so that he could place a mobile home on it.

Sammy's wife told him in 2018 that "No Trespassing" signs were placed on the property, and when Sammy investigated, he learned that Joy had burned down the house on the Subject Property, put up the signs, and installed a gate. At the conclusion of the trial, the trial court found that Sammy Ford, Jr.'s family acquired the property through both 10- and 30- year acquisitive prescription and named Sammy Ford, Jr. as the owner of the Subject Property. This appeal followed.

## DISCUSSION

Joy asserts three assignments of error, all of which involve whether Sammy acquired the Subject Property through acquisitive prescription. Those assignments of error are: 1) the district court erred in finding Sammy

4

had just title and was in good faith; 2) the district court erred in finding Sammy possessed the property as owner; and 3) the district court erred in finding Joy's possession only began in 2017.

The determination of whether property has been acquired through acquisitive prescription is one of fact and subject to the manifest error standard. *Brunson v. Hemler*, 43,347 (La. App. 2 Cir. 8/13/08), 989 So. 2d 246, *writ denied*, 08-2297 (La. 12/12/08), 996 So. 3d 1119. Where findings are based on determinations regarding the credibility of witnesses, the findings of the trier of fact demand great deference and are virtually never manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). "When there are two permissible views of the evidence, the trial court's choice between them cannot be manifestly erroneous or clearly wrong." *Frith Farms DeSoto Parish Int. P'ship, LLP v. Lee*, 53,116 (La. App. 2 Cir. 11/20/19), 284 So. 3d 1247, *quoting Hamel's Farm, LLC v. Muslow*, 43,475 (La. App. 2 Cir. 8/13/08), 988 So. 2d 882, *writ denied*, 08-2431 (La. 1/30/99), 999 So. 2d 754.

Ownership and other real rights in immovables may be acquired by the prescription of ten years. La. C.C. art. 3473. The requisites for the acquisitive prescription of ten years are possession for ten years, good faith, just title, and a thing susceptible of acquisition by prescription. La. C.C. art. 3475; *1026 Conti Holding, LLC v. 1025 Bienville, LLC*, 22-01288 (La. 3/17/23), 359 So. 3d 930; *EOG Resources, Inc. v. Hopkins*, 48,577 (La. App. 2 Cir. 11/27/13), 131 So. 3d 72, *writ denied*¸13-2861 (La. 3/14/14), 134 So. 3d 1196. This allows a person who purchases immovable property by a deed translative of title and who has a reasonable and objective belief that he

5

is acquiring valid title to the property to secure the title through peaceable possession for ten years when there has not been any disturbance by the true owner. *1026 Conti Holding, LLC*, *supra*. Our law has long recognized that immovable property can be acquired by acquisitive prescription through possession. *See* La. C.C. arts. 3446 and 3486; *1026 Conti Holding, LLC*, *supra*. "Acquiring ownership in this manner is no less valid and effective than by conventional title and, in fact, can supersede it." *1026 Conti Holding, LLC*, *supra*. The party asserting acquisitive prescription bears the burden of proving all the facts that are essential to support it, including possession for the requisite years. *Id.*

In the present matter, Sammy had the burden of proving possession of ten years, good faith, just title, and that the Subject Property was susceptible of acquisition by prescription. As a preliminary matter, La. C.C. art. 3485 states that all private things are susceptible of prescription unless prescription is excluded by legislation. The Subject Property is private property and, thus, susceptible to acquisitive prescription.

For the purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is the owner of the thing he possesses. La. C.C. art. 3480. The good faith determination is largely objective. La. C.C. art. 3480, comment (c). The possessor's belief the seller owned the property must be reasonable by objective standards. The Louisiana Supreme Court has recently stated:

> The basis of [the possessor's] good faith is his *mistaken belief* in the seller's ownership. Whether founded on an error of law or an error of fact, this belief is thus the first necessary ingredient of good faith ....

6

> The second ingredient of good faith is the requirement that the possessor's belief in the seller's ownership be reasonable by objective standards .... [The] process of evaluating the reasonableness of the possessor's belief is simply a process of evaluating the seriousness of his mistake and its impact on society in general. Depending on the circumstances, the possessor's mistake may be objectively justifiable or excusable, or it may be inexcusable.

*1026 Conti Holding, LLC*, *supra*, *quoting* Symeonides, *Property*, 47 La. L. Rev. 429, 429-30 (1986). Here, the trial court found that Ola Mae was in good faith because it was reasonable to believe that her parents owned the property in 1972 when they conveyed it to her and her husband. The public records reflected at that time that A.J. and Annie Handy acquired the Subject Property by recorded deed from Odis Handy, Sr. and they even assumed a mortgage on the Subject Property, which was then assumed by Ola Mae and Sammy, Sr. Any analysis of the public records regarding the 1970 conveyance of the Subject Property from Odis Handy to his parents, A.J. and Annie Handy, would necessarily include acknowledgment that at the time husbands were authorized to convey community property without the signature of their spouse.[3]

Although Odis Handy, Sr. was not an owner in fact of the Subject Property, the deed signed by him in 1970 could serve as a basis for the good faith understanding of any subsequent purchaser that this conveyance was effective. If nothing else, it could start the clock ticking on a ten-year good faith acquisitive prescription argument. Certainly the 1972 subsequent conveyance by A.J. and Annie Handy to Ola Mae and Sammy Ford, Sr.

---

[3] The pre-1980 Louisiana community property system designated the husband as "head and master," the "sole manager" of the community property. *See* La. C.C. art. 2404 (1870); La. C.C. art. 2370 (1825); La. C.C. art. 66 (1808).

would serve as a start date for determination of a ten-year good faith acquisitive prescription claim. We find no error in the reasonableness of this mistaken belief and the trial court's finding of good faith on behalf of Ola Mae, dating back at least to the 1972 deed in her chain of ownership, as detailed below.

A just title is a juridical act that is sufficient to transfer ownership or another real right. La. C.C. art. 3483. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated. *EOG Resources, Inc.*, *supra*. A just title does not necessarily equate to valid title. The Comments to Article 3483 state:

> A just title is a juridical act, that is, a licit act intended to have legal consequences. Moreover, it is an act translative of ownership or of another real right, such as a sale, donation, or exchange. *A just title need not be derived from the true owner because if that were the case, prescription would have no place. The law merely requires an act which, if it had been executed by the true owner, would have conveyed ownership or established another real right.*

(Emphasis added). *See also Williams v. Wiggins*, 26,060 (La. App. 2 Cir. 8/17/94), 641 So. 2d 1068 ("just title need not be derived from the true owner. It is enough that a deed contains language sufficient to convey access rights had the grantor possessed such rights."). While the sale of something belonging to another does not convey ownership, it can serve the purchaser as a just title for acquisitive prescription. *Heirs of John Beckwith LLC v. Sims*, 20-0476 (La. App. 4 Cir. 3/10/21), 315 So. 3d 306.

The record includes the deed whereby A.J. and Annie Handy conveyed the Subject Property to Ola Mae and Sammy Ford, Sr. That deed is dated April 21, 1972, describes the Subject Property, lists the parties, states that Ola Mae and Sammy, Sr. would be assuming the remaining

8

mortgage, and includes the book, page, and file number, evidencing that it was recorded in the conveyance records of the DeSoto Parish clerk of court. Although the conveyance was not executed by the true owner, Joy, it is an act translative of ownership of the Subject Property to Ola Mae and Sammy, Sr. The record then reflects a credit sale, whereby Sammy, Sr. conveyed his interest in the Subject Property to Ola Mae as her separate property. This sale is dated April 21, 1982, describes the Subject Property, states that Ola Mae will assume the remainder of the mortgage on the property, and notes the book, page, and file number to indicate that the sale was filed in the conveyance records of DeSoto Parish. Considering this, the trial court correctly found that the requirement for just title was met.

Finally, the record reveals that Ola Mae lived on the Subject Property from 1972 until her death in 2000. The evidence reflects, and the trial court found, that Ola Mae lived in the house located on the Subject Property in peaceful possession for more than ten years without any disturbance by the true owner.

Joy argues that Ola Mae was a precarious possessor during this time period because she testified that she gave Ola Mae permission to live on the Subject Property. Joy further argues that the trial court erred in finding that her possession of the Subject Property only began in 2017, directing us to the testimony from her sons regarding their clearing of the property as they traversed it to get to their adjacent hunting property. As noted above, we give great deference to the trial court's findings of fact and credibility determinations. *Rosell, supra.* The trial court noted in its reasons for judgment that despite Joy's testimony, her actions in the years that Ola Mae

9

lived on the Subject Property were not indicative of ownership, including not moving back into the home when she returned from California and not listing the property as an asset in her bankruptcy in 2006. We do not find any manifest error in the trial court's determination that Ola Mae had at least ten years of peaceful possession of the Subject Property.

In sum, we find no manifest error in the trial court's determination that Ola Mae Ford acquired the Subject Property through ten-year acquisitive prescription and that Sammy Ford, Jr., as her sole heir, is the owner of the property. Because we have affirmed the trial court's finding that Ola Mae Ford acquired the property though acquisitive prescription of ten years, any argument concerning 30-year acquisitive prescription has been pretermitted. Joy's assignments of error are without merit.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assigned to Joy Handy.

**AFFIRMED.**